2d Circuit Court — Plymouth District Division
No. 2012-165

THE STATE OF NEW HAMPSHIRE

v.

MATTHEW BLUNT

Argued: January 16, 2013
Opinion Issued: March 13, 2013

*Michael A. Delaney,* attorney general (*Nicholas Cort,* assistant attorney general, on the memorandum of law and orally), for the State.

*Thomas Barnard,* assistant appellate defender, of Concord, on the brief and orally, for the defendant.

LYNN, J. The defendant, Matthew Blunt, appeals an order of the 2d Circuit Court — Plymouth District Division (*Kent,* J.), denying a motion to strike the imposition of class A misdemeanor sentences following the defendant's conviction of simple assault and resisting arrest. *See* RSA 631:2-a (2007) (simple assault); RSA 642:2 (Supp. 2012) (resisting arrest). On appeal, he argues that the sentences imposed by the trial court were unlawful because the complaints under which he was convicted alleged only class B misdemeanor offenses. We vacate the sentences and remand.

I

The record reflects the following undisputed facts. On December 30, 2010, Officer William Ulwick of the Lincoln Police Department was dispatched to the Mountain Club at Loon Mountain ski resort in response to a complaint of an individual "walking around the property kind of aimlessly and acting odd." Upon arrival, Ulwick observed the defendant in

the parking lot, throwing snow into the air. The officer followed the defendant around a corner and found him sitting on a snowmobile, "singing, talking, rapping to his [snowboard] boots." When asked by Ulwick what he was doing, the defendant responded that he was "enjoying the beautiful mountains and scenery," and was trying to get to a picnic table. In response to further questioning, the defendant asked if he was under arrest, and when told that he was not, requested that the officer discontinue "this line of questioning." When Ulwick persisted, the defendant started to walk away. At this point, Ulwick grabbed the defendant by his left hand and told him he was being detained. The defendant then punched Ulwick in the mouth, pushed him and attempted to tackle him. Ulwick took the defendant to the ground and, with the assistance of ski resort staff, placed him in handcuffs, after which he was taken to the officer's cruiser and removed from the area without further incident.

The State filed two criminal complaints against the defendant in the district division. The first alleged that he committed the "unprivileged physical contact" variant of simple assault, see RSA 631:2-a, I(a),[1] by "knowingly caus[ing] unprivileged physical contact to another in that [d]efendant struck Officer William Ulwick about the head." The second alleged that he committed the crime of resisting arrest, in that he physically interfered with Ulwick, whom he recognized to be a law enforcement officer seeking to effect his arrest or detention, by "pulling away from and struggling with said officer." On both complaint forms the box specifying "class A misdemeanor" was checked,[2] but neither before nor at the defendant's arraignment did the State file notice, pursuant to RSA 625:9, IV(c)(2) (Supp. 2012), of its intent to seek class A misdemeanor penalties. The State did, however, on March 7, 2011, file a notice of its intention to seek enhanced penalties under RSA 651:6, I(g) (Supp. 2012), with respect to the simple assault charge, based on the fact that the defendant knew at the time of the assault that Ulwick was a law enforcement officer acting in the line of duty.

Following a bench trial, on June 1, 2011, the district division found the defendant guilty of both offenses. On the simple assault charge, the court sentenced him to six months in the house of corrections, with all but thirty days deferred for two years upon good behavior, and two years probation. On the resisting arrest charge, the court imposed a sentence of sixty days

---

[1] RSA 631:2-a, I(a) provides that a person is guilty of simple assault if he "[p]urposely or knowingly causes bodily injury or unprivileged physical contact to another." (Emphasis added.)

[2] In response to inquiry by the court at oral argument, the State specifically indicated that it was not taking the position that checking the "class A misdemeanor" boxes on the complaint forms constituted sufficient notice to comply with RSA 625:9, IV(c)(2).

incarceration, all of which was suspended for a period of two years. The defendant did not then challenge the sentences on the ground that they exceeded what was permissible for a class B misdemeanor. Instead, he appealed the convictions to the superior court for a *de novo* jury trial. *See* RSA 599:1 (Supp. 2006) (amended 2011).[3]

The defendant subsequently waived his right to a jury trial, and on September 19, 2011, with the assent of the parties, the superior court granted a motion to remand the cases to the district division. At a hearing before the district division on January 17, 2012, the defendant made an oral motion to strike the class A penalties, asserting that the original sentences imposed by that court were unauthorized because he had been convicted only of class B misdemeanors. The court recessed the hearing and requested that the parties file memoranda of law on the issue.

On February 8, 2012, the court denied the defendant's motion to strike. In its written order, the court explained the basis for its ruling as follows:

> The Court finds that the State has met the burden imposed by the statute [RSA 625:9] as the complaints, on their face, indicated the offenses were Class A Misdemeanors and each complaint recited facts that involved an act of violence. . . . It would be nonsensical to believe that "struck William Ulwick about the head" or "pulling away and struggling" do not involve acts of violence.
>
> Furthermore, the [d]efendant through his attorney waived the arraignment and that would have been the appropriate time to raise the issue; or anytime prior to trial the issue could have been raised; or at sentencing the issue could have been raised; or prior to appeal the issue could have been raised; or prior to trial in the Superior Court, the matter could have been raised. While one cannot waive a mandatory right, it becomes clear that there was no confusion about the fact that the complaints indeed did allege acts that involved violence. And this is further amplified by the application of RSA 651:6 which speaks to crimes against law enforcement officers as specified as Class A misdemeanors.

This appeal followed.

## II

On appeal, the defendant argues that the district division erred in determining that each of the complaints charged a class A misdemeanor.

---

[3] A person convicted of a class B misdemeanor has no right of appeal to the superior court for a trial *de novo*. *See* RSA 502-A:12 (2010); RSA 599:1. Rather, the appeal in such cases is directly to this court pursuant to RSA 599:1-c, II (2001).

Specifically, he contends that the trial court was required to treat both complaints as alleging class B misdemeanors because: (1) neither complaint alleged a crime that involved as an element an act of violence or a threat of violence, *see* RSA 625:9, IV(c)(1); and (2) the State did not file notice of its intent to seek class A penalties on or before the date of his arraignment on a form approved for this purpose by the judicial branch administrative council, *see* RSA 625:9, IV(c)(2).

RSA 625:9, IV provides, in pertinent part:

> (c) Any crime designated within or outside this code as a misdemeanor without specification of the classification shall be presumed to be a class B misdemeanor unless:
>
> > (1) An element of the offense involves an "act of violence" or "threat of violence" as defined in paragraph VII; or
> >
> > (2) The state files a notice of intent to seek class A misdemeanor penalties on or before the date of arraignment. Such notice shall be on a form approved in accordance with RSA 490:26-d.

In turn, the pertinent portion of RSA 625:9, VII states:

> The term "act of violence" means attempting to cause or purposely or recklessly causing bodily injury with or without a deadly weapon; and the term "threat of violence" means placing or attempting to place another in fear of imminent bodily injury either by physical menace or by threats to commit a crime against the person of the other.

■ The defendant first argues that the trial court erroneously determined that both complaints fell within the terms of RSA 625:9, IV(c)(1) based on the factual allegations contained within the complaints describing the manner in which the offenses were committed. According to the defendant, the important consideration under the statute is not whether a particular offense was actually committed in a violent manner, but whether an act of violence must be involved as an *element* of the offense. *See* RSA 625:11, III (2007) (" 'Element of an offense' means such conduct, or such attendant circumstances, or such a result of conduct as . . . (a) *[i]s included in the definition of the offense.*" (emphasis added)). The State does not dispute the defendant's interpretation of the statute, and we agree that this is what the statute means.

■ Applying this interpretation, we conclude that neither the simple assault complaint nor the resisting arrest complaint required that an act of

violence be involved as an element of the offense. The variant of simple assault alleged here involved causing unprivileged physical contact, not bodily injury. As we stated in *State v. Burke*, 153 N.H. 361, 364 (2006), " 'unprivileged physical contact' includes all physical contact not justified by law or consent." Clearly, not all unprivileged physical contact entails "causing [or attempting to cause] bodily injury," RSA 625:9, VII, and therefore this variant of simple assault does not *necessarily* involve as an element an "act of violence" within the meaning of RSA 625:9, IV(c)(1). Similarly, the resisting arrest statute, RSA 642:2, which proscribes physical interference with a law enforcement officer seeking to effectuate an arrest or detention, may be violated by conduct that falls short of causing or attempting to cause bodily injury. For example, in *State v. Smith*, 144 N.H. 1, 7 (1999), we found evidence establishing merely that the defendant "broke free and retreated into the cellar," after being told he was under arrest, sufficient to support a conviction for violating RSA 642:2.

■ The defendant next asserts that the State also failed to satisfy the alternative avenue for avoiding the statutory presumption that unclassified misdemeanors be treated as class B misdemeanors because it failed to file notice of its intent to seek class A misdemeanor penalties at or before the defendant's arraignment. *See* RSA 625:9, IV(c)(2). The defendant advances two arguments in support of this claim. First, he argues that the mere fact that the boxes on the complaint forms signifying class A misdemeanors were checked was not sufficient to comply with the requirements of the statute. Again, we note that the State does not argue to the contrary, and again we agree with the defendant. RSA 625:9, IV(c)(2) requires that the notice be filed on a form approved by the judicial branch administrative council in accordance with RSA 490:26-d. We take judicial notice that the council has approved a form for use pursuant to the statute; the form contains a specific listing of the penalties that may be imposed for a class A misdemeanor, and requires the prosecutor or police officer to certify to the court that the notice has been or will be provided to the defendant at or before arraignment. We hold that merely checking the "class A misdemeanor" box on the standard complaint form does not constitute compliance with RSA 625:9, IV(c)(2).

Second, the defendant argues that the State's notice of intent to seek enhanced penalties under RSA 651:6, I(g) for the simple assault charge did not override RSA 625:9, IV and authorize the trial court to impose penalties in excess of those for class B misdemeanors. In response, the State first asserts that this argument is not preserved because the defendant did not address the application of RSA 651:6, I(g) in either his notice of appeal or his opening brief. We reject the State's position. Although the trial court's

order cited RSA 651:6, the order is unclear as to what effect, if any, the trial court concluded this statute had on its ability to impose class A misdemeanor sentences. In these circumstances, we believe that the defendant's notice of appeal and opening brief, both of which frame the issue broadly as whether the trial court had the authority to impose class A misdemeanor sentences, did not need to preemptively assert that RSA 651:6 did *not* provide such authorization; it was sufficient for the defendant to address the issue in his reply brief in response to the State's assertion that the statute did authorize the sentences imposed. *Cf.* SUP. CT. R. 16(3)(b) ("The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein."); *Town of Barrington v. Townsend,* 164 N.H. 241, 245 (2012) (broad question of whether campground was illegal fairly encompassed question whether it violated particular section of zoning ordinance); *Panas v. Harakis & K-Mart Corp.,* 129 N.H. 591, 617 (1987) (holding that reply brief is properly employed to reply to opposing party's brief).

■ Turning to the merits, we note first that because RSA 651:6, I(g) applies only to "crimes defined in RSA 631," it is not applicable to the defendant's conviction on the resisting arrest charge, since that offense is found in RSA chapter 642.

With respect to the simple assault charge, the State contends that the plain language of RSA 651:6, III makes the enhanced penalty it authorizes for offenses that fall within the terms of RSA 651:6, I(g) applicable to misdemeanors generally, without regard to their classification as A or B level offenses. It therefore argues that to hold that this statute authorizes enhanced penalties only for class A misdemeanors would be improper, as it would effectively "add language to the statute that the legislature did not see fit to include." *State Employees Assoc. of N.H. v. N.H. Div. of Personnel,* 158 N.H. 338, 343 (2009). Assuming without deciding that RSA 651:6, III(b) may be invoked by the State to enhance the sentence for either a class A or class B misdemeanor to "a minimum to be fixed by the court of not more than 2 years and a maximum to be fixed by the court of not more than 5 years," RSA 651:6, III(b), we must still determine whether the State may use the statute to seek an enhanced sentence *in the district division.*

■ In *Kiluk v. Potter, Administrator,* 133 N.H. 67 (1990), the defendant was convicted of two misdemeanors in the former district court. Pursuant to the version of RSA 651:6 then in effect, the court sentenced him to two concurrent sentences of not more than five years nor less than two years based on the fact that he had twice previously been imprisoned on sentences in excess of one year. On appeal, we reviewed the history leading to the 1912 amendment of Part II, Article 77 of the New Hampshire

Constitution, which authorized the legislature "to give to police courts original jurisdiction to try and determine, subject to right of appeal and trial by jury, all criminal causes wherein the punishment is less than imprisonment in the state prison." We then held that:

> [A] district court judge may not sentence a convicted criminal defendant to the enhanced penalties provided in RSA 651:6. The maximum sentence which a district court may impose for a given crime is one year in a county correctional facility. *If the State plans to seek an extended term of imprisonment under RSA 651:6, it has the option to seek a trial in the first instance in the superior court. See* RSA 592-A:1; *State v. Blouin,* 110 N.H. 202, 203, 263 A.2d 677, 678 (1970).

*Kiluk,* 133 N.H. at 70 (emphasis added).

■■ The State argues that *Kiluk* is not a bar to utilizing RSA 651:6 to seek an enhanced sentence in the district division as long as the sentence actually imposed does not exceed one year of imprisonment. However, when the legislature exercised the power granted it by the above amendment, it defined the district division's jurisdiction based not upon what sentence is actually imposed in any given case, but upon the maximum penalty that may be imposed for the offense with which the defendant is charged. RSA 502-A:11 states, in pertinent part: "Each district court shall have . . . original jurisdiction . . . of all crimes and offenses committed within the confines of the district in which such court is located which are *punishable* by a fine not exceeding $2,000 or imprisonment not exceeding one year, or both . . . ." (Emphasis added.) *See* RSA 490-F:3 (Supp. 2012) (granting the circuit court the jurisdiction formerly exercised by the district court). Consequently, because the notice of intent to seek enhanced sentence purported to authorize a sentence beyond that which the district division had the power to impose, we conclude, as we did in *Kiluk,* that the State's filing of that notice in the circuit court was wholly ineffective. And insofar as the State's position can be understood to suggest that the RSA 651:6 notice should nonetheless be treated as a "proxy" for the notice required by RSA 625:9, IV(c)(2), we reject this argument as well. Not only was the RSA 651:6 notice filed in this case devoid of any indication that its purpose was to authorize the imposition of class A misdemeanor penalties (as opposed to the much greater penalties provided for in RSA 651:6, III(b)), but the notice was not filed at or before the defendant's arraignment, as required by RSA 625:9, IV(c)(2).

For the reasons stated above, we hold that the defendant's two convictions were for class B misdemeanors. Accordingly, we vacate the sentences imposed and remand to the district division for resentencing.

*Sentences vacated and remanded.*

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

Rockingham
No. 2012-195